UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MELISSA D. EVANS,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>　　　　　　　　Defendant. | Case No. 3:14-cv-05649-KLS<br><br>ORDER REVERSING AND<br>REMANDING DEFENDANT'S<br>DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On January 6, 2011, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging in both applications she became disabled beginning September 19, 2007. *See* Dkt. 11, Administrative Record ("AR") 22. Both applications were denied upon initial administrative review on March 22, 2011 and on reconsideration on May 27, 2011. *See id.* A hearing was held before an administrative law judge ("ALJ") on September 27,

ORDER - 1

2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *See* AR 45-76.

In a decision dated December 27, 2012, the ALJ determined plaintiff to be not disabled. *See* AR 22-39. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 13, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1; 20 C.F.R. § 404.981, § 416.1481. On August 18, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 1. The administrative record was filed with the Court on October 24, 2014. *See* Dkt. 11. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits or in the alternative for further administrative proceedings, because the ALJ erred:

(1) in evaluating the opinion evidence from examining psychologists Kimberly Wheeler, Ph.D., Kevin N. Morris, Psy.D., and Tasmyn Bowes, Psy.D.;

(2) in evaluating the evidence in the record concerning plaintiff's obesity;

(3) in discounting plaintiff's credibility;

(4) in assessing plaintiff's residual functional capacity ("RFC"); and

(5) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy.

For the reasons set forth below, the Court agrees the ALJ erred in evaluating the opinion evidence from Drs. Wheeler, Morris and Bowes – and thus in assessing plaintiff's RFC and in finding her to be capable of performing other jobs – and therefore in determining her to be not disabled. Also for the reasons set forth below, however, the Court finds that while defendant's

ORDER - 2

decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

---

[1] As the Ninth Circuit has further explained:

ORDER - 3

I.   The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

---

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 4

1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

A.    Dr. Wheeler

In regard to the medical opinion evidence in the record in this case, plaintiff first alleges error in the ALJ's following findings:

> The claimant underwent a psychological exam by Kimberly Wheeler, Ph.D., on August 30, 2012 (Exhibit 20F). The claimant's demeanor during Dr. Wheeler's exam was different than in other exams, where the claimant's [sic] spoke in a "soft wispy voice," her speech was "peppered with self-derogation," and she did not listen well (Exhibit 20F/4). The claimant was only able to recall 1/3 objects after five minutes and showed poor insight

ORDER - 5

>(Exhibit 20F/5). Dr. Wheeler did not find a limitation in the claimant's ability to persist in following short and simple instructions or making simple work related decisions (Exhibit 20F/3). However, she did find up to marked limitations in various work related areas, such as following detailed instructions, adapting to changes, asking questions or requesting assistance, performing effectively in a work setting, and maintaining appropriate behavior in a work setting (Exhibit 20F/3). Little weight is given to the opinion of Dr. Wheeler because she relied too heavily on the claimant's presentation at her exam, which was not a typical presentation observed by other medical personnel in the record. Furthermore, Dr. Wheeler did not give adequate consideration to the claimant's activities, which include many work like functions such as caring for her infant child.

AR 36. Specifically, plaintiff argues the ALJ failed to provide valid reasons for giving little weight to Dr. Wheeler's opinion. The Court agrees.

First, there is nothing improper in regard to an examining psychologist's reliance on a claimant's presentation as support for that psychologist's opinion. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (opinion based on clinical observations supporting diagnosis of depression is competent evidence); *Sanchez v. Apfel*, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) (when mental illness is basis of disability claim, clinical evidence may consist of observations of professionals trained in psychopathology). It also is not clear on what basis the ALJ determined Dr. Wheeler "relied too heavily" on plaintiff's presentation – other than the fact that it was "not a typical presentation observed by other medical personnel" – given that no authority was cited by the ALJ that indicates the extent to which an examining psychologist may acceptably rely on the claimant's presentation in forming that psychologist's opinion.

Nor is there any requirement that the observations of an examining psychologist must be consistent with those of other medical professionals to be valid. It is true that an ALJ need not accept the opinion of a medical source if it is inadequately supported "by the record as a whole," and that a number of medical sources who examined or treated plaintiff did not report the same or substantially similar observations as Dr. Wheeler. *See* AR 340, 342, 353-54, 366, 370-71, 377,

ORDER - 6

390, 408, 410-11, 419, 427, 440, 443, 518-19, 521, 526, 603-06, 662, 670, 687, 690, 696, 699, 710; *Batson*, 359 F.3d at 1195. As pointed out by plaintiff, though, the record contains similar clinical observations from at least one other examining psychologist in the record. *See* 578-79, 592. As also pointed out by plaintiff, Dr. Wheeler's examination occurred a significant amount of time after most of the other treating and examining medical source evidence in the record, and therefore could indicate a deterioration in plaintiff's symptoms.

It is far from clear as well as to what the ALJ meant in stating Dr. Wheeler "did not give adequate consideration" to plaintiff's activities such as caring for her infant child, given that Dr. Wheeler specifically completed a section describing activities of daily living in the evaluation form she completed. *See* AR 675. Dr. Wheeler, furthermore, expressly noted plaintiff's care for her daughter and the significant difficulties she reported with respect thereto. *See id.* Because it is clear Dr. Wheeler was aware of plaintiff's activities at least to the extent reported, but the ALJ failed to explain how that awareness did not constitute adequate consideration thereof, the Court finds this too was an inadequate basis for rejecting Dr. Wheeler's opinion.

Plaintiff argues the ALJ further erred in rejecting the global assessment of functioning ("GAF") scores of 45 and 49 Dr. Wheeler offered. *See* AR 676. The ALJ did not discuss those particular scores in his decision, but instead found more generally that:

> The record contains global assessment of functioning (GAF) scores. While the clinical findings and functional assessments provided by the clinicians who provided these scores have been thoroughly reviewed, the scores themselves are given very little weight because they lack probative value in this analysis. The regulations direct the administrative law judge to perform a function-by-function assessment of the claimant's maximum residual functional capacity. *See* S.S.R. 96-9p. But as shown in the explanations accompanying the scores on the GAF scale, the scores are an attempt to rate symptoms *or* functioning. *See the Diagnostic of Statistical Manual of Mental Disorders* at 32 (4th ed. 1994). In this case, it is not evident from a review of the scores in the record which of these the respective clinicians were rating. This is particularly relevant to the analysis of the claimant's ability to perform basic work

ORDER - 7

activities, as symptoms are an individual's "own description" of his or her impairments. *See* SSR 96-7p. As the claimant's statements about functioning are less than fully credible, a score based on such statements is of little value. Furthermore, as made clear in the August 2000 comments in the Federal Register about regulations that address the mental disorder evaluation under the Social Security Act, the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50,746-50,765 (August 21, 2000) (discussing comments to 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.00D). For these reasons, the GAF scores in this case do not convey information that furthers the functional analysis and therefore the scores are given very little weight.

AR 36 (emphasis in original). Plaintiff asserts "[n]one of these reasons were legally sufficient to reject the particular GAF scores indicating [her] serious impairment." Dkt. 14, p. 7.

A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of the individual's overall level of functioning.'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 32); *see also Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."). Although a GAF score "standing alone" does "not control determinations of whether a [claimant's] mental impairments rise to the level of a disability," it is "relevant evidence" of the claimant's ability to function, and therefore "may be a useful measurement." *Garrison v. Colvin*, 759 F.3d 995, 1002 n. 4 (9th Cir. 2014); *England v. Astrue*, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).

On the other hand, while a GAF score thus may be "of considerable help" to the ALJ in assessing a claimant's functional capacity, "it is not essential" to the accuracy thereof. *Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002). Accordingly, an ALJ's failure to reference or specifically account for a GAF score in assessing a claimant's residual

ORDER - 8

functional capacity does not by itself make the RFC assessment inaccurate. *See id.* In other words, the mere fact that a low GAF score may have been assessed by a medical source is not in itself sufficient to establish disability.

The Court agrees with plaintiff that the ALJ's general rejection of the GAF scores in the record cannot be upheld. Given that a GAF score is reflective of the individual's functioning at the time of evaluation,[2] to the extent the individual's self-reporting is relied on by the evaluating medical source to assess the level of functioning, that score may be discounted. Here, though, it is not fully clear the extent to which the medical sources in the record relied on the self-reporting of plaintiff in assessing the scores that they did. For example, Dr. Wheeler stated she relied on her "clinical impression" as well as plaintiff's "report of functioning" in assessing the scores that she did. AR 676. In late January 2011, Dr. Bowes also assessed a GAF score of 45 based on "subjective *and* objective data" and the observation of plaintiff's presentation. AR 578 (emphasis added). This is not to say there is no basis for rejecting the GAF scores in the record, but that more explanation from the ALJ was needed to do so, at least in regard to those scores where it is not entirely clear the extent to which they are based on plaintiff's self-reporting.

B.    Dr. Morris

Plaintiff also challenges the ALJ's findings concerning the opinion of Dr. Morris, which read as follows:

> . . . Kevin Morris, Psy.D., evaluated the claimant on February 17, 2009, less than two weeks after she had lost her daughter (Exhibit 3F/61-72). Despite her depression related to the loss of her daughter, the claimant was able to engage in mental testing. The claimant made some errors on the Mini Mental Status

---

[2] *See Wentzek v. Colvin*, 2013 WL 4742993, *8 (D.Or. Sept. 3, 2013) ("The GAF scale is a tool for reporting the clinician's judgment of the individual's overall level of functioning; accordingly, a GAF score reflects a snapshot of a claimant's presentation on the day of the examination.") (quoting *Davis v. Astrue*, 2012 WL 4005553, *9 (D.Or. June 12, 2012), *adopted by* 2012 WL 3614310 (D.Or. Aug. 21, 2012) (quoting *Chapman v. Astrue*, 2009 WL 3046025, *4 (D.Or. July 30, 2009); and American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) at 32 (internal quotations omitted))).

ORDER - 9

>exam, such as incorrectly spelling "world" backward and only remembering 1/3 objects after 10 minutes (Exhibit 3F/65). She scored 24/30 on the exam, which was normal but below the median for her educational level (Exhibit 3F/65-66). She made no errors on Trails A testing, but it took her 47 seconds which indicated a mild to moderate impairment in short-term memory functioning (Exhibit 3F/69). With more complex testing the claimant made three errors and the time it took her to complete, 136 seconds, indicated moderate to severe impairment in short-term memory functioning (Exhibit 3F/71). Dr. Morris opined that the claimant would have moderate limitations following complex instructions or performing routine tasks and marked limitations in learning new tasks and exercising judgment (Exhibit 3F/63). Dr. Morris opined that the claimant would generally have moderate limitations in social factors, such as relating appropriately with supervisors or coworkers, interacting with the public, and maintain appropriate behavior (Exhibit 3F/63). Some weight is given to Dr. Morris because he had the opportunity to examine the claimant and his observations largely support his findings. However, greater weight is not given because Dr. Morris evaluated the claimant only days after the claimant lost her daughter. Furthermore, Dr. Morris did not have the opportunity to consider later evaluations, in particular the evaluation of [Kathleen S. Mayers, Ph.D.]

AR 33-34. The Court agrees the ALJ failed to provide valid reasons for rejecting Dr. Morris's opinion here as well.

First, although Dr. Morris did diagnose plaintiff with bereavement, he also diagnosed her with an adjustment disorder with mixed depression and anxiety and a recurrent major depressive disorder with marked severity, neither of which appeared to be necessarily connected with or at the very least limited to the recent death of plaintiff's daughter. *See* AR 388-91. Indeed, Dr. Morris estimated plaintiff would remain limited to the extent he found her to be for a maximum period of greater than six months based on the above diagnoses, which indicates that despite the recent death of plaintiff's daughter, Dr. Morris may have believed her mental health impairments were more longstanding. *See* AR 391. Second, while the ALJ notes the later opinion of Dr. Mayers, in which plaintiff was found to be much less impaired than Dr. Morris, the opinion of Dr. Wheeler is even more recent, and as discussed above suggests greater functional limitations.

ORDER - 10

C. Dr. Bowes

Lastly in terms of the medical opinion evidence in the record, plaintiff argues the ALJ also erred in making the following findings:

> The claimant underwent a psychological evaluation by Tasmyn Bowes, Psy.D., on January 14, 2010 and again on January 27, 2011 (Exhibits 3F/10-27 and 11F/5-10). Dr. Bowes observed that the claimant was neat and cooperative but had a slow to average pace (Exhibits 3F/27 and 11F/22). The claimant had a flat affect but maintained a logical thought process (Exhibits 3F/27 and 11F/22). On the first Mini Mental Status Exam, the claimant showed intact memory but did make two errors when subtracting serial sevens (Exhibit 3F/25-26). She was able to follow a three-step task and her score of 28/30 indicated no cognitive impairment (Exhibit 3F/26). It took the claimant 40 seconds to complete Trails A testing, which indicated mild to moderately impaired cognitive functioning (Exhibit 3F/17). Dr. Bowes opined that the claimant would have no limitation following simple instructions and only a mild limitation following complex instructions (Exhibit 3F/15). She found that the claimant would have only a mild limitation relating appropriately with coworkes, supervisors, and interacting with the public (Exhibit 3F/15). Dr. Bowes did find that the claimant would have moderate difficulties performing routine tasks and tolerating the pressures and expectations of a normal work setting due to lack of energy and motivation (Exhibit 3F/15). She did not find more than a mild limitation in her ability to care for herself or maintain appropriate behavior in a work setting (Exhibit 3F/15). The claimant had similar performance during her 2011 mental status exam, where she scored 27/30 (Exhibit 11F/21). Both of her Trails A and B testing were in the mild to moderately impaired range (Exhibit 11F/10). Dr. Bowes found no more than moderate limitations in cognitive and social factors such as following complex instructions, learning new tasks, performing routine tasks without supervision, being aware of hazards, performing effectively in a setting with public contact, and maintaining appropriate behavior in a work setting (Exhibit 11F/8-9). Some weight is given to Dr. Bowes because she had the opportunity to examine the claimant on more than one occasion and her observations largely support her findings. However, greater weight is not given because she did not adequately consider several of the claimant's activities that indicated slightly greater ability to function than Dr. Bowes found, such as the claimant's care for her mother.

AR 34. Here too the Court agrees with plaintiff that the ALJ's stated reason for not giving more weight to the opinion of Dr. Bowes was insufficient. As with Dr. Wheeler discussed above, it is far from clear as to what the ALJ meant in stating Dr. Bowes "did not adequately consider"

ORDER - 11

plaintiff's activities such as caring for her mother, given that Dr. Bowes specifically noted in his January 2010 evaluation report that plaintiff ran chores for her mother, who "is totally dependent upon" her, as well as that she was her developmentally disabled daughter's care giver. AR 339, 341. In his January 2011 evaluation report, Dr. Bowes noted that plaintiff washes her mother's dishes, and that she does "light stuff that does not affect [her] back" and goes "to the store for her [mother] when [her] back permits." AR 575. Again because it is clear Dr. Bowes was aware of plaintiff's activities at least to the extent reported, but the ALJ failed to explain how that awareness did not constitute adequate consideration of those activities, the Court finds this was an inadequate basis for rejecting Dr. Bowes' opinion.

II.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the

ORDER - 12

claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ assessed plaintiff with the following mental residual functional capacity:

> **. . . The claimant can perform simple, routine tasks. She can occasionally interact with coworkers but cannot have contact with the public. She could have few, if any, changes in work routines. . . .**

AR 26 (emphasis in original). But because the ALJ erred in evaluating the medical opinion evidence in the record concerning plaintiff's mental functional limitations, it cannot be said that the ALJ's RFC assessment completely and accurately describes all of those limitations or is supported by substantial evidence.

III.    The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). See *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See*

ORDER - 13

*Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same mental functional limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. *See* AR 70. In response to that question, the vocational expert testified that an individual with those limitations would be able to perform other jobs. *See id.* Based on the vocational expert's testimony, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. *See* AR 37-38. Given the ALJ's errors in evaluating the medical opinion evidence in the record and thus in assessing RFC, however, the hypothetical question the ALJ posed cannot be said to completely and accurately describe all of plaintiff's limitations or supported by substantial evidence, and therefore the ALJ's step five determination cannot be upheld.

IV.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further

ORDER - 14

administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical opinion evidence in the record concerning plaintiff's mental functional limitations, her residual functional capacity and her ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted. Plaintiff argues that given the ALJ's errors in evaluating the medical opinion evidence in the record, that evidence should be credited as true and benefits should be paid on that basis.

It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." *Lester*, 81 F.3d at 834 (citation omitted). On the other hand, where the ALJ is not required to find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be resolved, and thus the *Smolen* test will not be found to have been met. *See Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003). In addition, remand for further proceedings is appropriate "when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014). Given that there is conflicting medical opinion evidence regarding plaintiff's mental functional limitations (*see, e.g.,* AR 517-21) – and in light of the evidence in the record overall – there is still serious doubt as to whether plaintiff is

ORDER - 15

1  in fact disabled considering the record as a whole. Accordingly, the Court declines to apply the
2  credit as true rule here.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 5th day of May, 2015.

Karen L. Strombom
United States Magistrate Judge

ORDER - 16